IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KIMBERLY A. ELKJER,               §
                                  §
        Plaintiff,                §
                                  §
v.                                §          Civil Action No. 3:13-CV-1655-K
                                  §
SCHEEF & STONE, L.L.P.,           §
                                  §
        Defendant.                §

## MEMORANDUM OPINION AND ORDER

Before the Court are: (1) Defendant Scheef & Stone, L.L.P.'s ("Defendant")

Motion to Stay the Case and Compel Arbitration (Doc. No. 7); and (2) Plaintiff

Kimberly A. Elkjer's ("Plaintiff") Motion for Leave to File Response to Defendant's New

Arguments Raised in Reply, or, Alternatively, to Strike Those New Arguments (Doc. No.

18).   The Court **GRANTS** Plaintiff's motion for leave to file her surreply, filed as

Exhibit 1 to her motion.  The surreply is deemed filed the same date the motion was

filed.  As for Defendant's motion, after careful consideration of the motion, response,

reply, surreply, the appendices, and the applicable law, the Court hereby **GRANTS**

Defendant's motion to stay the case and compel arbitration for the following reasons.

## I.      Factual and Procedural Background

Plaintiff is an attorney currently employed as a partner with Defendant.  Plaintiff

filed suit against Defendant in state court on April 4, 2013, alleging unlawful

employment practices under the Texas Commission on Human Rights Act ("TCHRA").
On April 29, 2013, Plaintiff filed a Second Amended Petition, the current live pleading, alleging employment practices in violation of the Civil Rights Act of 1964 and amendments thereto ("Title VII") as well as the TCHRA.  In general, Plaintiff alleges Defendant intentionally discriminated against her and other female attorneys based on their sex.  Specifically, Plaintiff contends harmful decisions were made regarding an employee's compensation or the general terms, conditions, or privileges of a person's employment based on that employee's gender.  Furthermore, these alleged gender-based decisions deprived or tended to deprive the female employees of employment opportunities or would otherwise harm the status of those female employees.  On April 30, Defendant removed the case to this Court.  After removing the case, Defendant filed this Motion to Stay the Case and Compel Arbitration, which is now ripe for determination.

## II.    Motion to Stay the Case and Compel Arbitration

Defendant moves the Court to stay the case and compel arbitration of Plaintiff's claims.  In support of its motion, Defendant directs the Court to the Amended and Restated Partnership Agreement of Scheef & Stone, L.L.P. ("Partnership Agreement"), effective January 1, 2009, which Plaintiff signed in her capacity as a partner.  (Doc. No. 22).  This Partnership Agreement contains an Arbitration Clause.  *Id.* at § 11.13.  Defendant argues that Plaintiff is precluded from pursuing her claims in court because she agreed to submit any claims to binding arbitration when she signed the Partnership

Agreement.  Plaintiff contends that the Partnership Agreement is an agreement between Defendant's individual partners, but Defendant itself is not a party to it.  Therefore, she is not bound to arbitrate her claims against Defendant.

## A.   Applicable Law

The Supreme Court has declared that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* "is a congressional declaration of a liberal policy favoring arbitration." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24 (1983). Further, federal policy strongly favors the enforcement of arbitration agreements.  *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 217 (1985); *Texaco Exploration and Production Co. v. AmClyde Engineered Products Co., Inc.,* 243 F.3d 906, 909 (5th Cir. 2001).  Under the FAA, federal courts are required to stay any matter referable to arbitration.  9 U.S.C. § 3; *Texaco,* 243 F.3d at 909.  However, because arbitration is necessarily a matter of contract, courts may require a party to submit a dispute to arbitration only if the party has expressly agreed to do so.  *Personal Security & Safety Sys. Inc. v. Motorola Inc.,* 297 F.3d 388, 392 (5th Cir. 2002)( citing *AT&T Tech., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 648 (1986)).

Courts perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute.  *Will-Drill Res., Inc. v. Samson Res. Co.,* 352 F.3d 211, 214 (5th Cir. 2003); *Webb v. Investacorp, Inc.,* 89 F.3d 252, 257-58 (5th Cir. 1996)(citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985)).  First, the court must determine whether the parties agreed to arbitrate the dispute.  *Will-Drill,*

352 F.3d at 214; *Webb*, 89 F.3d at 258.  This first step requires the court to determine whether, according to state law, (1) the parties have a valid agreement to arbitrate and (2) whether the dispute falls within the scope of the arbitration agreement.  *Webb*, 89 F.3d at 258.  Upon finding there is an agreement to arbitrate, the court then turns to the second step of considering whether any federal statute or policy renders the claims nonarbitrable.  *Will-Drill*, 352 F.3d at 214; *Webb*, 89 F.3d at 258.

Courts must be mindful to not consider the merits of the underlying action when applying this two-step analysis.  *Primerica Life Ins. Co. v. Brown,* 304 F.3d 469, 471 (5th Cir. 2002); *Snap-On Tools Corp. v. Mason,* 18 F.3d 1261, 1267 (5th Cir. 1994).  Under Section 4 of the FAA, the court determines only whether the arbitration clause covers the allegations at issue, and if it does, "the court may not delve further into the merits of the dispute."  *Primerica,* 304 F.3d at 471 (quoting *Snap-On Tools,* 18 F.3d at 1267).  Although there is a strong federal policy favoring arbitration, the court does not defer to this policy when making the initial determination about the existence of an agreement to arbitrate.  *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008)(internal citations omitted)*; Will-Drill*, 352 F.3d at 214.  However, if a valid agreement to arbitrate does exist, the court must observe the strong federal policy favoring arbitration and resolve all ambiguities in favor of arbitration.  *Primerica*, 304 F.3d at 471.

### B.       Agreement to Arbitrate Between the Parties

The Court must first determine whether there is an agreement to arbitrate between these two parties.  In accordance with state law, the Court must decide (1) whether the parties have a valid agreement to arbitrate and (2) whether the dispute falls within the scope of that arbitration agreement.  *See Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).  Both elements of this analysis are in dispute here.

### 1.       Valid Agreement to Arbitrate

Defendant argues it is a party to the Partnership Agreement which contains the Arbitration Clause, so there is a valid agreement to arbitrate.  Moreover, Defendant contends that any challenge Plaintiff asserts Defendant's status as a party to the Partnership Agreement must be submitted to the arbitrator.  In support of this, Defendant points to the express incorporation of the rules of the American Arbitration Association("AAA") in the Partnership Agreement.  Rule 6 of the AAA Employment Arbitration Rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement," so the Court must defer ruling on the enforceability or applicability of the arbitration agreement to the arbitrator.  Plaintiff asserts that the Court, not the arbitrator, must decide whether an agreement to arbitrate between these parties even exists.  Plaintiff does not dispute that she signed the Partnership Agreement nor that all the other Partners signed it; because of that, she argues that this Partnership Agreement is between only the Partners.  Since Defendant

is not a signatory to the Partnership Agreement, which contains the Arbitration Clause, she contends there is no agreement to arbitrate between Plaintiff and Defendant.

The Court agrees with Plaintiff that the threshold issue of whether an agreement to arbitrate exists is for the Court, not an arbitrator, to determine. The Fifth Circuit has previously held that "[when] the very existence of any agreement [to arbitrate] is disputed, it is for the courts to decide at the outset whether an agreement was reached." *See Will-Drill,* 352 F.3d at 218-19. In explaining its holding, the Fifth Circuit stated, "where the very existence of an agreement is challenged, ordering arbitration could result in an arbitrator deciding that no agreement was ever formed. Such an outcome would be a statement that the arbitrator never had any authority to decide the issue." *Id*. The Fifth Circuit differentiated between a dispute "where a party attacks the very existence of an agreement," which a court must resolve, as compared with a party disputing the "continued validity or enforcement" of the agreement, which is for the arbitrator to decide. *Id.* at 219. In the case at hand, Plaintiff, the party resisting arbitration, is attacking the very existence of an agreement to arbitrate with Defendant. Therefore, the Court, not the arbitrator, must resolve whether an agreement to arbitrate exists. *See id.*

In determining whether an agreement to arbitrate exists, "'courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.'" *Webb*, 89 F.3d at 258 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also In re Waggoner Estate*, 163 S.W.3d 161, 165 (Tex. App.–Amarillo 2005, no pet.)(partnership agreements are governed by contract law). When looking at a

ORDER – PAGE 6

written contract, the court must determine the true intentions of the parties as set forth in the contract. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). The court should examine and consider the entire instrument so it can reconcile and give full effect to all the contract's provisions so that none of them will be rendered meaningless. *See id.* at 393-94.

Defendant contends there is a valid agreement to arbitrate between Plaintiff and Defendant, citing to the Partnership Agreement as evidence. The Partnership Agreement, which contains the arbitration clause, is signed by Plaintiff, it created the legal entity that is Defendant, and Plaintiff has accepted the benefits of it. Plaintiff argues that the Partnership Agreement, which contains the arbitration clause, is between the partners only, as evidenced by the signatures of the partners on their own behalf and the absence of any signature on behalf of Defendant. The partners, Plaintiff contends, may fashion the terms of their relationship with each other as well as their relationship with the partnership, including whether to have any relationship with the partnership on certain issues, such as arbitration. And, in this case, Plaintiff contends the partners have an agreement to arbitrate only amongst themselves, not with Defendant; so there is no agreement to arbitrate between Plaintiff and Defendant, and the Court cannot compel her to arbitration. Plaintiff goes on to argue that current case law instructs that the simple fact Defendant did not sign its own operating agreement means the Court should deny the motion to compel arbitration.

The Court turns to Plaintiff's arguments addressing whether there is an agreement to arbitrate. Plaintiff first argues that case law demands the Court deny Defendant's motion to compel arbitration simply because Defendant it is not an actual signatory to the Partnership Agreement and, therefore, "is not a party to its own operating agreement containing the arbitration clause at issue." To support her assertion, Plaintiff cites the Court to five cases; however, none of these cases involve L.L.P.s and none come from Texas courts or address Texas law. This case involves Texas partnership law, and none of these cases Plaintiff cites as authority actually address Texas partnership law or even partnerships. Plaintiff does not cite to any Texas court in support of her assertion, and the Court can find none. The Court finds this argument has no merit.

Plaintiff also argues that the Partnership Agreement, which contains the arbitration clause, is between only the individual partners, and because Defendant is not a signatory party to it, there is no arbitration agreement between Plaintiff and Defendant. Plaintiff contends that Defendant may not, therefore, invoke the arbitration clause. Defendant argues that it could not have signed the Agreement because it did not "exist" until the Agreement took effect. Defendant also argues that it is a party to the Agreement by operation of Texas statutory law and by the language in the Agreement itself, as it has certain obligations and rights under the Partnership Agreement.

Arbitration is a matter of contract and, generally, it cannot be compelled for an issue involving a non-signatory to the arbitration agreement. *See Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527-28 (5th Cir. 2000). The Court has reviewed the

unredacted Partnership Agreement *in camera*.  The Court recognizes that Defendant is not a signatory to the Partnership Agreement, but the Court does not find this fatal. This Partnership Agreement is a master agreement of sorts that created an ongoing relationship between the Partners but also between the Partners and the Partnership. The Partnership Agreement addresses much more than just her relationship with the other Partners.  It governs the very existence and operation of the limited liability partnership that is Defendant, as well as the terms and conditions of Plaintiff's employment with Defendant,.  Section 152.002(a) of the Texas Business Organization Code states, "[e]xcept as provided by Subsection (b), a partnership agreement governs the relations of the partners and between the partners and the partnership." TEX. BUS. ORG. CODE § 152.002(a) (West 2012)(emphasis added).  None of the exceptions set forth in subsection (b) apply to this Partnership Agreement, and Plaintiff makes no argument to that effect.  The Court reads this statutory language to encompass the partnership, here Defendant, as a party to the Partnership Agreement.  The Court could find no statutory requirement that Defendant must sign the Partnership Agreement in order for Section 152.002(a) to apply, and Plaintiff did not provide any such citation.

In her responsive brief, Plaintiff acknowledges that section 152.002(a) "governs the relationship between partners and between partners and the partnership." However, she argues that the statute itself does not "dictate the terms of that [partnership] agreement;" specifically, it does not give Defendant any rights to arbitrate under the Partnership Agreement, nor does it make Defendant a party to the arbitration agreement

she has with the other partners.  The Court agrees with Plaintiff that partners may control the terms of their partnership agreement with each other as well as with the partnership; the statutory provisions do not require any specific terms be included in a partnership agreement.  However, the plain language of the statute makes clear that, outside of certain exceptions which are not applicable here, a partnership agreement governs the relationship between the partners and also between the partners and the partnership.  The Partnership Agreement before this Court contains an arbitration clause.  The Partners chose to include this arbitration clause in the Partnership Agreement when the statute certainly did not require an arbitration clause.

Plaintiff argues that language in the arbitration clause limits its scope to the individual partners: "Each party, by signing this agreement, voluntarily, knowingly, and intelligently waives any right such party may otherwise have to seek remedies in court or other forums, including the right to jury trial."  The Court disagrees with Plaintiff. Reading the plain language of this one sentence in the arbitration clause reveals it is just a reaffirmation that the signatories are waiving their rights to seek remedies in any other forum.  In reading the entire clause, it still clearly states that it applies to "any disputes arising under or in connection with this [Partnership] Agreement," a Partnership Agreement under which Defendant has rights and obligations and may maintain an action for breach of the Agreement.  No language in this arbitration clause excludes any specific claims from its scope or limits its applicability to disputes arising between only the individual partners.

Section 152.211(a)-(b) of the Texas Business Organization Code, provides support for the conclusion that Defendant is a party to the Partnership Agreement and, therefore, the arbitration clause.  Section 152.211(a)-(b) provides that both a partner and the partnership "may maintain an action" against the other for breach of the partnership agreement.  TEX. BUS. ORG. CODE § 152.211(a)-(b) (West 2012).  Plaintiff argues that only the individual partners are "bound by the terms and provisions" of the Partnership Agreement because every Partner signed the Partnership Agreement, but only in their individual capacities as partners, not on behalf of Defendant.  The Court has already addressed the statutory language of section 152.002(a), which clearly states that partnership agreements govern the relationship between partners and the partnership, so Plaintiff's argument has no merit.  Additionally, to lend credence to this argument would negate the clear intent of section 152.211(b), which permits a partner to bring a cause of action against the partnership related to the partnership agreement.  If partnerships were not subject to the terms and provisions of the partnership agreements, the Court wonders why the legislature would permit a partner to sue the partnership on claims related to the partnership agreement.  There is no statutory requirement that a partnership agreement must be signed on behalf of the partnership as a condition precedent in order to bring a claim under the agreement.

Specific language of the Partnership Agreement itself supports the Court's analysis.  The Court must examine and consider the entire Partnership Agreement in order to reconcile and give full effect to all of the Agreement's provisions so that none

ORDER – PAGE 11

are rendered meaningless.  *Coker*, 650 S.W.2d at 393-94.  To find merit in Plaintiff's argument would result in the Partnership Agreement, at least in large part, having no effect and serving no purpose.  The Partnership Agreement addresses the very existence and operation of Defendant.  If Defendant itself was not bound by its terms and provisions, it would have no duty to comply with its obligations under the Partnership Agreement, such as partners' compensation.  In addition to the statutory support previously discussed, the language of the Partnership Agreement itself affirms that Defendant has rights under the Partnership Agreement.  Paragraph 11.12, "Violation of Covenants," stipulates that, should a partner breach any provision of the Agreement, "<u>in addition to all other rights and remedies available to the Partnership</u>," the breaching partner would be liable in damages to Defendant.

For all the foregoing reasons, the Court concludes that Defendant is a party to the Partnership Agreement and, because the Partnership Agreement contains an arbitration clause, there is a valid agreement to arbitrate between Plaintiff and Defendant.

## 2.    Dispute Subject to Scope of Arbitration Clause

The Court has already concluded there is a valid agreement to arbitrate between these parties, or alternatively, that Defendant has the right to enforce the arbitration agreement.  Now the Court turns to whether Plaintiff's claims fall within the scope of the arbitration agreement and should proceed in an arbitral forum, or whether they fall outside the scope and should proceed in a judicial forum.

The Arbitration Clause found in the Partnership Agreements states that:

> Any disputes arising under or in connection with this Agreement, including, without limitation, those involving claims for specific performance or other equitable relief, will be submitted for mediation in front of a mutually acceptable mediator.  If the dispute still exists following mediation, it shall be submitted to binding arbitration in Dallas County, Texas, before an arbitrator mutually selected by two arbitrators, with one arbitrator being selected by each party.  The arbitrator need not be a member of the American Arbitration Association; however the rules of the American Arbitration Association shall otherwise govern the conduct of all arbitrations conducted hereunder.  EACH PARTY, BY SIGNING THIS AGREEMENT, VOLUNTARILY, KNOWINGLY AND INTELLIGENTLY WAIVES ANY RIGHTS SUCH PARTY MAY OTHERWISE HAVE TO SEEK REMEDIES IN COURT OR OTHER FORUMS, INCLUDING THE RIGHT TO JURY TRIAL.  The arbitrator will have full authority to order specific performance and other equitable relief and award damages and other relief available under this Agreement or applicable law, but will have no authority to amend or change the terms of this Agreement or existing law, except as provided in Section 11.14 below.  All arbitration proceedings will be confidential, except as may be required by applicable law.  The decision of the arbitrator shall be final and binding, and any judgment may be entered in any court of competent jurisdiction.  Each party shall bear his, her or its own legal fees in connection with any arbitration hearing and the parties shall share all other costs of arbitration, including the costs of the arbitrator, regardless of the outcome of the arbitration.

Partnership Agreement at § 11.13.  Defendant takes the position that Plaintiff's claims undoubtedly fall within the scope of the Arbitration Clause, arguing the clause is broad and the Partnership Agreement addresses the very subject of Plaintiff's claims.  Plaintiff contends that her claims do not "require legal reliance" on the Partnership Agreement, so her claims do not fall within the scope of the Arbitration Clause.

In determining whether a claim falls within the scope of the arbitration clause, the court looks to the factual allegations of the complaint, not the legal causes of action. *Colt Unconventional Res., LLC v. Resolute Energy Corp.*, 3:13-CV-1324-K, 2013 WL

3789896, *5 (N.D. Tex. July 19, 2013)(citing *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 900 (Tex. 1995)).   The Fifth Circuit has held that "whenever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration."   *Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 755 (5th Cir. 1993) (quoting *Mar-Len of La., Inc. v. Parsons-Gilbane*, 773 F.2d 633, 635 (5th Cir. 1985)); *see also Banc One*, 367 F.3d at 429 ("[O]nce a court determines that an agreement to arbitrate exists, the court must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration.").

Plaintiff's claims allege that Defendant intentionally discriminated against her and other female attorneys based on their gender in violation of Title VII and the TCHRA.   Specifically, Plaintiff contends harmful decisions were made regarding an employee's compensation or the general terms, conditions, or privileges of employment based on the employee's gender.   Plaintiff further alleges the gender based decisions deprived or tended to deprive the female employees of employment opportunities or would otherwise harm the status of those female employees.   The law is clear that statutory employment discrimination claims may be subject to arbitration.   *See Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229, 230 (5th Cir. 1991)(Title VII can be subjected to compulsory arbitration); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).   The question for the Court is whether the scope of the arbitration clause here is broad enough in scope to encompass the Plaintiff's statutory claims.

The Arbitration Clause provides, in relevant part, "[a]ny disputes <u>arising under or in connection with this Agreement</u>, including, without limitation, those involving claims for specific performance or other equitable relief, will be submitted for mediation in front of a mutually acceptable mediator."   Partnership Agreement at § 11.13 (emphasis added).  The United States Supreme Court and the Fifth Circuit have held arbitration clauses with similar language to be broad in their reach.  *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 397-98 (1967)(arbitration clause using language "[a]ny controversy or claim arising out of or relating to this Agreement" construed as broad); *Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (agreement used the language "in connection with or relating to" which left no doubt that arbitration clause was broad); *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 164-65 (5th Cir. 1998)(agreement that applied to any dispute "arising out of or in connection with or relating to" the agreement was broad).  Broad arbitration clauses are "not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute."  *Pennzoil*, 139 F.3d at 1067.  More specifically, "broad arbitration clauses are those where the language of the clause requires arbitration of any dispute that arises out of or relates to 'the agreement, or disputes that are "in connection with" the agreement.'"  *Baudoin v. Mid-Louisiana Anesthesia Consultants, Inc.*, 306 Fed. Appx. 188, 192 (5th Cir. 2009)(quoting *Coffman v. Provost * Umphrey Law Firm, LLP*, 161

F.Supp.2d 720, 725 (E.D. Tex. 2001)).  Narrow clauses, on the other hand, use just the phrase "arising out of" or "arising under" the agreement.  *Coffman*, 161 F.Supp.2d at 725; *see Baudoin*, 306 Fed. Appx. at 192.

Following controlling case law, the Court concludes that the arbitration clause at issue here, which uses the phrase "arising under or in connection with this [Partnership] Agreement," is "broad [and] capable of expansive reach" to include Plaintiff's statutory claims.  *See Pennzoil*, 139 F.3d at 1067.  Because the Court has found the Arbitration Clause at issue to be broad, Plaintiff's claims need only "touch" issues covered by the Partnership Agreement for those claims to be subject to arbitration.  *Pennzoil*, 139 F.3d at 1068.

Plaintiff's claims, which allege discrimination involving employment decisions, implicate the very employment conditions set forth in the Partnership Agreement. Plaintiff alleges she is an "employee" within the meaning of the TCHRA and Title VII "when considering  factors such as the firm's actions and powers in hiring and firing these attorneys, setting rules and regulations for work, supervising these attorneys, and requiring these attorneys to report to managing equity partners, as well as the extent to which these attorneys are and are not able to influence the firm, and the manner in which the firm handles profits, losses, and liabilities."  These"factors" Plaintiff relies on are specifically addressed in the Partnership Agreement, so the issue of whether she is an employee under the TCHRA and Title VII  "touches" on the Partnership Agreement.

Likewise, her allegations of gender-based decisions adversely affecting employment opportunities, requirements, and compensation "touch" on the Partnership Agreement. Her claims specific items contained in the Partnership Agreement, such as compensation, the rules and regulations of work, supervision of attorneys, the requirement to report to equity partners, and the method by which Defendant addresses profits, losses, and liabilities. These items are addressed in detail in the Partnership Agreement, therefore it would necessarily be relied upon. Because the language of the Arbitration Clause is broad and Plaintiff's claims "touch" on issues addressed in the Partnership Agreement, the Court concludes it is sufficiently broad to encompass Plaintiff's employment claims. *See also Mouton v. Metropolitan Life Ins. Co.*, 147 F.3d 453, 456 (5th Cir. 1998); *Rojas v. TK Communications, Inc.*, 87 F.3d 745, 749 (5th Cir. 1996)

Plaintiff contends that her claims do not "require legal reliance" on the Partnership Agreement, so her claims do not fall within the scope of the Arbitration Clause. Plaintiff's argument misses the mark; whether or not her claims "require legal reliance" is not the standard. Because the Arbitration Clause is broad, Plaintiff's claims need only "touch" on the Partnership Agreement. *Pennzoil*, 139 F.3d at 1068 (broad arbitration clauses are "not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute."). Furthermore, the Court must look to Plaintiff's factual allegations, not legal causes of action, in determining whether the dispute falls within the scope of the Arbitration Clause. *See Colt*, 3:13-CV-1324-K,

2013 WL 3789896, at *5.  As the Court has already stated, Plaintiff's allegations involve

specific employment conditions and details set forth in the Partnership Agreement.

The Court concludes that the arbitration clause in the Partnership Agreement is

broad.   Because Plaintiff's claims "touch" on issues addressed in the Partnership

Agreement, the claims fall within the scope of the arbitration clause.

### 3.      Unconscionability of Arbitration Clause

Plaintiff argues the Arbitration Clause is substantively unconscionable because it

fails to permit the "effective vindication of statutory rights and remedies."   More

specifically, Title VII and the TCHRA, which form the basis of Plaintiff's claims, provide

remedies, like injunctive relief, attorneys's fees, and court costs, which would not be

available to Plaintiff in an arbitral forum.   In her brief, Plaintiff states she alleges only

substantive unconscionability, which refers to the fairness of the arbitration clause itself,

and not procedural unconscionability, which refers to the circumstances surrounding the

adoption of the arbitration provision.  *See* Pl.'s Resp. at p. 20 (Doc. No. 13).   Texas

courts have held that state law requires the party claiming unconscionability to bear the

burden of establishing both procedural and substantive unconscionability.  *See Ski River*

*Dev., Inc. v. McCalla*, 167 S.W.3d 121, 136 (Tex. App.—Waco 2005, pet. denied); *In re*

*Turner Bros. Trucking Co., Inc.*, 8 S.W.3d 370, 375 (Tex. App.—Texarkana 1999, no pet.);

*Wade v. Austin*, 524 S.W.2d 79, 86 (Tex. Civ. App.—Texarkana 1975, no writ); *see also*

*Belanger v. BAC Home Loans Servicing, L.P.*, 839 F.Supp.2d 873, 880 (W.D. Tex. 2011);

*Ramirez v. 24 Hour Fitness USA, Inc.*, Civ. Action No. H-12-1922, 2013 WL 2152113,

*3 (S.D. Tex. May 16, 2013). Because Plaintiff argues only substantive unconscionability, she has failed to meet her burden of proving *both* procedural and substantive unconscionability as required by Texas law.

Even if she had properly alleged unconscionability, her argument still fails. Plaintiff contends an arbitration clause "must permit the effective vindication of statutory rights and remedies" and this arbitration agreement "strips away all statutory remedies, including enforcing a judgment and preventing recovery of statutory costs" among other things. Outside of simply listing the "statutory rights" Plaintiff contends she loses under the arbitration clause, she offers no support for her argument. Moreover, the Court does not read the language of this arbitration clause to do divest her of these remedies. The mere fact that the arbitration clause requires her to submit her claims to an arbitral forum, rather than judicial, does not strip away her rights under the available statutes. The Supreme Court has held that "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum." *Mitsubishi*, 473 U.S. at 626-27.

Plaintiff failed to meet her burden related to unconscionability. Furthermore, she failed to prove the arbitration clause precludes her from asserting or recovering the statutory remedies and rights available to her. Plaintiff's argument as to unconscionability of the arbitration clause fails.

### C.      Are Claims Non-Arbitrable under Federal Statute or Policy?

The Court must now address the second step of this inquiry and consider whether any federal statute or policy renders Plaintiff's claims nonarbitrable.  *See Will-Drill*, 352 F.3d at 214; *Webb*, 89 F.3d at 258. If a party agrees to arbitrate, "the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."  *Mitsubishi*, 473 U.S. at 628; *see Garrett v. Circuit City Stores, Inc.*, 449 F.3d 672, 674 (5th Cir. 2006).  The party wishing to avoid arbitration "bears the burden of proving that Congress intended to preclude a waiver of a judicial forum" for the statutory claim at issue.  *Garrett*, 449 F.3d at 674.  Plaintiff makes no argument that any federal statute or policy renders her claims nonarbitrable. Current case law indicates that statutory employment claims, both under federal and state law, are indeed subject to arbitration without running afoul of Congressional intention to the contrary.  *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001)("The Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of Congressional enactments giving employees specific protection against discrimination prohibited by federal law"); *Rojas*, 87 F.3d at 748; *Alford*, 939 F.2d at 230 (Title VII claims can be subject to compulsory arbitration under FAA).  Plaintiff has not shown there is any Congressional intent to preclude a waiver of a judicial forum for her statutory employment claims.

Because there is a valid agreement to arbitrate between these parties and there is no federal statute or policy rendering Plaintiff's claims nonarbitrable, the Court concludes compelling Plaintiff's claims against Defendant to arbitration is appropriate.

### D.     Non-Signatory Enforcement

In the alternative, had the Court concluded there was no valid arbitration agreement between these parties, the Court finds that Defendant could enforce the arbitration clause as a non-signatory to the Partnership Agreement.   Under certain circumstances, a non-signatory to a contract with an arbitration clause may compel arbitration based on a theory of equitable estoppel as a fairness principle.  *Grigson*, 210 F.3d at 527-28.  Quoting an Eleventh Circuit case, the Fifth Circuit stated that although arbitration is a contractual issue and "cannot, in general, be required for a matter involving an arbitration agreement non-signatory, a signatory to that agreement *cannot* . . . 'have it both ways':  it cannot on the one hand seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory."  *Id.* at 528 (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).

The Court uses an equitable estoppel framework when addressing whether a non-signatory can compel arbitration.  *See Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002).  The Fifth Circuit has outlined two situations in which a non-signatory can compel arbitration:

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. . . . Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.

*Grigson*, 210 F.3d at 527 (adopting the "intertwined-claims" test formulated by Eleventh Circuit that sets forth two bases for permitting a nonsignatory to compel arbitration); *see Westmoreland*, 299 F.3d at 465 (citing *Hill v. G E Power Sys., Inc.*, 282 F.3d 343, 347-48 (5th Cir. 2002)).  The application of this test turns on the specific facts of each case. *Hill*, 282 F.3d at 348; *Grigson*, 210 F.3d at 527.

The Court turns to the allegations in Plaintiff's Second Amended Petition (filed in state court before removal) as read in conjunction with the Partnership Agreement. Plaintiff claims Defendant discriminated against her and other female attorneys in violation of the Texas Commission on Human Rights Act and subsequent amendments ("TCHRA") and the Civil Rights Act of 1964 and subsequent amendments ("Title VII"). Plaintiff argues she and other female attorneys employed by Defendant are "employees" with the meaning of the TCHRA and Title VII when taking into account factors like,

> [T]he firm's actions and powers in hiring and firing these attorneys, setting rules and regulations for work, supervising these attorneys, and requiring these attorneys to report to managing equity partners, as well as the extent to which these attorneys are and are not able to influence the firm, and the manner in which the firm handles profits, losses, and liabilities."

Pl.'s Second Amended Pet., ¶ 14 (Doc. 1-16).

As previously stated by the Court, the Partnership Agreement governs the operation of Defendant law firm, including those specific employment factors listed by Plaintiff as evidence she is an "employee" within the TCHRA and Title VII.  It addresses, among other things, capital (including cash contributions and participating partners), compensation (including participation of partners and the calculation for attorney compensation), the duties of the partners (including a partner's time and charges for services), management (including the executive committee and its matters), and meetings and voting of partners.  "Partner" and "attorney" are both defined in the Partnership Agreement.  These items addressed and governed by the Partnership Agreement directly relate to whether Plaintiff is an "employee" within the meaning of TCHRA and Title VII, under which she asserts her claim.  Her claims related to adverse gender-based decisions also involve certain of these specific items, such as method for calculating compensation, the rules and regulations of work, the supervision of attorneys, the requirement to report to equity partners, and the method by which Defendant addresses profits, losses, and liabilities.  These are addressed in detail in the Partnership Agreement, therefore it would necessarily be relied upon in adjudicating Plaintiff's claims against the non-signatory, Defendant.  The Court concludes equitable estoppel is appropriately applied in this case.  *Grigson*, 210 F.3d at 527 ("First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory.").

Even if there was not a valid agreement to arbitrate between Plaintiff and Defendant, the Court concludes equitable estoppel permits Defendant to compel arbitration because Plaintiff's claims are "intertwined with, and dependent upon," the Partnership Agreement.

## III.   Plaintiff's Motion to File Surreply

The Court **grants** Plaintiff 's motion for leave to file a surreply.  Plaintiff's surreply, filed as Exhibit 1 to her Motion for Leave, is deemed filed as of the date the motion was filed.  Even considering Plaintiff's surreply, however, the outcome remains unchanged.

## IV.   Plaintiff's Notice

Upon reviewing the unredacted Partnership Agreement filed under seal by Defendant (Doc. No. 22), the Court noticed a reference to an "Exhibit A" in one of the sections.  The Court ordered Defendant to file this "Exhibit A" under seal with the Court (Doc. No. 23), which Defendant did that same day (Doc. Nos. 24 & 25).  On March 19, 2014, Plaintiff filed her Notice Concerning Documents 22, 24, and 25 That Defendant Recently Filed Under Seal (Doc. No. 26).  In this Notice, Plaintiff contends that the unredacted Partnership Agreement as filed by Defendant was a complete and accurate copy; the Partnership Agreement that circulated to all the Partners to sign did not include Exhibit A or any other attachments.

The Court did not consider the Exhibit in arriving at its conclusion.  Whether or not this Exhibit is a proper attachment to the Partnership Agreement, does not change

the fact that the Partnership Agreement itself, with or without any attachments, still addresses and "touches" on compensation.  Therefore, any argument related to the accuracy of the Exhibit is irrelevant for the Court's analysis and findings.

## V.      Conclusion

The Court concludes there is an agreement to arbitrate because Defendant is a party to Partnership Agreement containing the arbitration clause and Plaintiff's claims fall within the scope of the broad language of the Arbitration Clause, and there is no federal statue or policy which renders these claims non-arbitrable.  Alternatively, the Court concludes Defendant as a non-signatory can compel Plaintiff, a signatory, to arbitration on these claims on the basis of equitable estoppel.  Accordingly, the Court **stays** the case and orders Plaintiff's claims to arbitration.  *See* 9 U.S.C. § 3; *Texaco,* 243 F.3d at 909.  The parties bear their own costs and fees.  There appears to be no further reason at this time to maintain the file as open for statistical purposes.  The Clerk is therefore instructed to submit a JS-6 form to the Administrative Office, thereby removing this case from the statistical records.

SO ORDERED.

Signed March 27th, 2014.

*Ed Kinkeade*

ED KINKEADE
UNITED STATES DISTRICT JUDGE